UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YI TAI SHAO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHIEF JUSTICE JOHN G. ROBERTS, et al.,<br><br>　　　　Defendants. | No.  2:22-cv-0325 JAM AC PS<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, an attorney with a suspended license, is proceeding in this action pro se. See ECF No. 25.  The action was accordingly referred to the undersigned for pretrial matters by E.D. Cal. R. ("Local Rule") 302(c)(21).  The case is presently before the court on plaintiff's most recent motion for recusal (ECF No. 32), and for consideration of sua sponte dismissal pursuant to the Order to Show Cause that issued on March 2, 2022 (ECF No. 24).

I.　　Background

Plaintiff filed this case on February 22, 2022, with a 230-page complaint against almost eighty named defendants (ECF No. 1), and a motion for temporary restraining order (ECF No. 3). Plaintiff paid the filing fee.  See docket notation dated February 22, 2022.  On February 23, 2022, plaintiff filed a second motion for temporary restraining order.  ECF No. 4.  On February 28, 2022, plaintiff filed a third motion for a temporary restraining order.  ECF No. 21.  Plaintiff has

1

filed various lengthy memoranda, declarations, and statements in support of her various motions (ECF Nos. 10, 11, 12, 15, 17, 22, 23) and two requests for judicial notice (ECF Nos. 13, 16).

Upon initial review of plaintiff's complaint, the undersigned found that it clearly did not state a claim upon which relief could be granted, and ordered plaintiff to show cause in writing why the case should not be dismissed sua sponte and without leave to amend. ECF No. 24. The order specified that it could be discharged by the filing of an amended complaint that complied with the Federal Rules of Civil Procedure and addressed the identified defects. Id.

Following issuance of the Order to Show Cause, plaintiff filed a motion for the recusal of the undersigned and U.S. District Judge John A. Mendez. ECF No. 27. The next day she filed an amended recusal motion. ECF No. 29. The undersigned denied the motion as to herself and recommended that Judge Mendez deny the motion as to himself. ECF No. 31. The next day, plaintiff filed another amended motion for recusal. ECF No. 32. This amended motion, which at 57 pages exceeds the undersigned's clearly posted page limits, presents various theories of corruption and conflict of interest. Plaintiff supplemented the amended motion with a second 33-page document containing both objections to the OSC and additional argument on the recusal motion. ECF No. 33.

II.     The Motion for Recusal is Denied as to the Undersigned Magistrate Judge

The standards governing recusal have been set forth in the previously issued Findings and Recommendations, ECF No. 31, and will not be repeated here. In sum, the question is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Studley, 783 F.2d 934, 940 (9th Cir. 1986) (quoting Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984)). Once again, plaintiff's motion for recusal is baseless and posits speculative connections between the judges and parties that provide no grounds for recusal.

For example, plaintiff asserts that "Magistrate Judge Claire is herself homosexual, registered her same sex marriage before 2008, leading the work force to thwart Proposition 8 and vigorously advocating for same sex marriage, it is likely that her ECF 24 and 28 were to help McManis Faulkner law firm, the leader for almost all conspiracies in this case. In or about 2012,

2

James McManis accepted the assignment to prepare an Amicus Curiae Brief on behalf of Santa Clara County Bar Association to support the same sex marriage for some case he could not recall." ECF No. 33 at 22-23. Such "connections" do not provide grounds for recusal.

No reasonable person would question the partiality of the undersigned on the grounds presented by plaintiff. The undersigned again declines to recuse herself.

### III. It is Recommended that Judge Mendez Not Recuse

The pending Findings and Recommendations, ECF No. 31, explain why Judge Mendez has no cause to recuse himself. The content of plaintiff's amended motion and supplement do not alter the undersigned's conclusion that Judge Mendez need not recuse himself. The undersigned recommends that Judge Mendez deny the most recent amended motion for recusal.

### IV. This Action Must be Dismissed Without Leave to Amend

In the Order to Show Cause why this case should not be dismissed for failure to state a claim (ECF No. 24), the court asked plaintiff to address several fundamental problems with her complaint. For ease of reference, the court now reiterates the summary of the complaint and then addresses plaintiff's response to each topic identified in the OSC as requiring dismissal.

#### A. Overview of the Complaint

Plaintiff's complaint, which is extremely lengthy and difficult to decipher, attempts to sue various judges and court employees for alleged conspiracies and illegal acts regarding the outcome of various cases and petitions she has filed, vexatious litigant orders entered against her, and for blocking her from accessing certain court files. There are also allegations related to a child support and custody order, corruption involving various Inns of Court organizations, private attorneys, corruption at the California State Bar organization, and corruption within the Department of Child Support services. Not all allegations are directly tied to causes of action or requested relief.

Plaintiff's fifteen causes of action are each labeled as constitutional violations with relief sought under 42 U.S.C. § 1983. However, plaintiff primarily seeks relief in the form of orders from this court voiding the orders of other state and federal courts, ordering cases in other courts to be transferred to different courts, ordering other judges to recuse themselves, or requiring other

courts to manage their dockets in particular ways (Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XIII).

In Count VII, in addition to voiding court orders, plaintiff asks this court to declare "the secret giant club American Inns of Court Foundation and its children" to be illegal organizations. ECF No. 1 at 136.

In Count XII, plaintiff alleges "James McManis, Michael Reedy, McManis Faulkner law firm hired hackers to interfere Plaintiff's work, stalk and burglarize Plaintiff's residences continuously from 2018 until present." ECF No. 1 at 148. Plaintiff alleges several officers conspired to alter police reports and include a caution that plaintiff has mental illness. Id. at 149. Plaintiff asks the court to "require Sgt. Tasha DeCosta, Ltn. Looten, Sgt. Bryn Ward and Sgt. Price to recover the police reports that they altered" and for associated monetary damages. Id. Plaintiff alleges that her First and Fifth amendment rights were violated because she was deterred from seeking redress from the government.

In Count XIV, plaintiff asks the court to issue an injunction requiring the California Commission on Judicial Performance to re-open complaints that plaintiff has made about various judges. Id. at 151. Plaintiff alleges that her "fundamental right to seek grievance" was violated. ECF No. 1 at 151.

B. Legal Standard for Dismissal

When a complaint clearly does not state a claim upon which the court can grant relief, a court can dismiss the case on its own ("sua sponte"), at the outset, without leave to amend. See Reed v. Lieurance, 863 F.3d 1196, 1207-08 (9th Cir. 2017) (affirming district court's sua sponte dismissal of claim under Fed. R. Civ. P. 12(b)(6)). In determining whether a complaint states a claim upon which relief may be granted, the court must accept as true all factual allegations that are not clearly baseless or fanciful. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

The court notified plaintiff that the undersigned was contemplating a recommendation of dismissal, and explained that plaintiff would be provided the opportunity to demonstrate in writing why the case should not be dismissed or to provide an amended complaint that cures the defects of the original complaint. Plaintiff chose to submit an explanation in writing (ECF No.

4

32); she did not file an amended complaint.  For all of the reasons stated below, plaintiff's case must be dismissed without leave to amend.

### C. The Rooker-Feldman Doctrine Bars Most of Plaintiff's Claims

The Rooker-Feldman doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." Carmona v. Carmona, 603 F.3d 1041, 1050-51 (9th Cir. 2010).  It prohibits federal district courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

To determine if the Rooker-Feldman doctrine bars a case, the court must first determine if the federal action contains a "forbidden de facto appeal" of a state court judicial decision.  Noel v. Hall, 341 F.3d 1148, 1156 (9th Cir. 2003).  If it does not, "the Rooker-Feldman inquiry ends." Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013).  If the court determines that the action amounts to a forbidden appeal, however, the court cannot hear the de facto appeal portion of the case—and, as part of that refusal, must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with an issue resolved by the state court in its judicial decision.  Noel, 341 F.3d at 1158; see also Bell, 709 F.3d at 897 ("The 'inextricably intertwined' language from Feldman is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the Rooker-Feldman analysis.").  A complaint is a "de facto appeal" of a state court decision where the plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." Noel, 341 F.3d at 1163.

Here, as stated in the order to show cause, the court finds that Counts II, III, IV, V, IX, X, XI, and XIII  directly ask this federal court to alter or void state court orders involving plaintiff.  ECF No. 1 at 119, 122, 127, 129, 139, 145-46, 148, and 150.  By seeking a remedy in which this court invalidates a state court decision and amends the state court record, plaintiff is asking this court to "review the final determinations of a state court in judicial proceedings," which is at the core of Rooker-Feldman's prohibition.  See In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000).

Many of the claims involve child support debt, and requests to vacate a family court order and child support debt are generally considered de facto appeals. See Riley v. Knowles, No. 1:16-cv-0057 JLT, 2016 WL 259336, at *3 (E.D. Cal. Jan. 21, 2016).

Plaintiff argues in response to the OSC that her "case fits into an exception to the Rooker-Feldman doctrine on the grounds of extrinsic fraud," citing Kougasian v. TMSL, 359 F.3d 1136, 1140 (9th Cir. 2004), because she "is alleging a wrongful act by the adverse party[] and can therefore 'seek to set aside a state court judgment obtained through extrinsic fraud' in federal court." ECF No. 32 at 27. The "extrinsic fraud" exception applies when a plaintiff is not alleging a legal wrong, but instead "a wrongful act by the adverse party" that prevented her from presenting her claims in court. Kougasian, 359 F.3d at 1140–41. In other word, the exception is limited to frauds extrinsic to the state court judgment and perpetrated by an adverse party (rather than the court) in that state proceeding.

Plaintiff describes her claims as "extrinsic fraud, involving judiciary conspiracy from 2010 until present." Id. at 28. She identifies three "major lines of frauds," as follows: (1) "Plaintiff has been completely blocked her ways to seek relief from State Court on her child custody deprival issues due to conspiracies" because defendants conspired to obtain a pre-filing vexatious litigant order and the California Chief Justice summarily denied all her petitions for review; (2) regarding vexatious litigant orders, six years after their issuance plaintiff "discovered that the issuing judge, Judge Maureen Folan was or maybe is the attorney of McManis defendants! No statutory requirement was met, and she added on to 10 to pull in those summarily denied appeals and blocked Plaintiff from making oral argument when she added new issues on the hearing[]"; and (3) plaintiff alleges various judicial misdeeds (including the "concealing" of filings by the U.S. Supreme Court) related to a case she brought regarding "the leading attorney of American Inns of Court Foundation, James Mcmanis." Id. at 28-29.

These allegations of judicial fraud do not bring plaintiff's case within the reach of the extrinsic fraud exception, because they involve alleged frauds *intrinsic to* the state court proceedings and judgments at issue. Compare Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013) (finding extrinsic fraud exception applied where plaintiff "did not allege the state court

committed legal error, nor did they seek relief from the state court judgment itself."). The fact that plaintiff has named state court judges as defendants in her federal complaint does not transform them into "adverse parties" within the meaning of the extrinsic fraud exception; these defendants were not "adverse parties" in state court, they were adjudicators. In sum, plaintiff's theory of a "judiciary conspiracy" is fundamentally inconsistent with the exception that she claims. The extrinsic fraud exception applies to frauds on the court, not frauds by a court. See Kougasian, 359 F.3d at 1140–41.

Finally, to the extent plaintiff also alleges extrinsic fraud against some non-judicial defendants, those claims are "inextricably intertwined" with the claims barred by Rooker-Feldman and therefore cannot be considered. See Noel, 341 F.3d at 1158; Bell, 709 F.3d at 897.

### D. This Court Does Not Have Jurisdiction Over Higher Federal Courts

Plaintiff's Counts I, VI, and VII ask this district court to stay, enjoin, void, vacate, or transfer various petitions and appeals before the Supreme Court of the United States and before the D.C. Circuit Court of Appeals. ECF No. 1 at 114, 131, 135, and 138. As explained in the OSC, a federal district court such as this one has no power to stay, enjoin, void, vacate, or transfer orders or cases associated with the United States Supreme Court or the D.C. Circuit Court of Appeals, or any other higher federal court. Plaintiff argues that district courts do have the power to override state court decisions and even Supreme Court precedent where civil rights are at issue. ECF No. 32 at 26. She cites as an example Hollingsworth v. Perry, 570 U.S. 693, 702 (2013), in which a district court judge declared Proposition 8 (the amendment to the California Constitution making same sex marriage illegal) unconstitutional and permanently enjoined the law.[1]

This case is not remotely comparable to Hollingsworth, in which the federal district court was called upon to determine the legality under the United States Constitution of a new state constitutional amendment. In this case, plaintiff is essentially attempting to appeal other courts'

---

[1] Plaintiff also cites an Illinois district court habeas corpus case in which a district court judge ordered that an evidentiary hearing was necessary. Richardson v. McCann, 653 F. Supp. 2d 831, 836 (N.D. Ill. 2008). The federal district courts' jurisdiction to review state court criminal convictions in habeas cases is grounded in constitutional and statutory provisions that are not relevant here. See, e.g., 28 U.S.C. § 2241.

decisions in particular cases, including discretionary case management decisions, to this court. She is not challenging the constitutionality of any law, but instead saying that higher federal courts unconstitutionally ruled against her and that their case management decisions were unconstitutional. Plaintiff fails to cite any authority for the proposition that a district court has this type of appellate jurisdiction over circuit courts or the Supreme Court of the United States. There is no such jurisdiction. For this reason, the claims must be dismissed.

        E.   Count XII Fails to State a Claim

Plaintiff asserts that several police officers violated her First and Fifth Amendment rights by altering police reports to indicate that plaintiff has a mental illness. ECF No. 1 at 149. Plaintiff asks "that an injunctive order be issued to require Sgt. Tasha DeCosta, Ltn. Looten, Sgt. Bryn Ward and Sgt. Price to recover the police reports that they altered." Plaintiff also "prays for monetary damages against James McManis, Michael Reedy and Tsan-Kuen Wang for their undue influence over the policeman and be jointly and severally liable to Plaintiff for all resulting damages" from criminal activities. Id. Plaintiff alleges that "Defendants further plot to put Plaintiff into mental hospital to stop her from doing litigation in seeking her grievances. They conspired and jointly deterred Plaintiff's first amendment right seeking grievance from the government, in violation of 28 U.S.C. §1983." ECF No. 1 at 149.

The First Amendment to the Constitution provides in relevant part that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "The protections afforded by the Petition Clause have been limited by the Supreme Court to situations where an individual's associational or speech interests are also implicated." WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999). Assuming the truth of plaintiff's allegations that the officers altered police reports and/or conspired with others to put her in a mental hospital, such facts cannot support a finding that plaintiff's First Amendment right to petition the government has been violated. First, plaintiff does not allege that the purported conspiracy actually prevented or deterred any particular litigation, and plaintiff's active participation in this case indicates clearly that she is not being prevented or deterred from litigating. Second, the complaint contains no facts suggesting that plaintiff was in

8

fact hospitalized, nor facts to support an inference that any actions of defendants related to plaintiff's mental state were motivated by an intent to prevent her from litigating. Third, as to the allegedly altered police reports, there is no indication that plaintiff's associational or speech rights have been implicated.

To the extent plaintiff brings a due process claim under the Fifth Amendment, the claim cannot proceed. A plaintiff cannot bring a Fifth Amendment due process claim against a state or local government entity or its employees, or against private individuals, because the due process component of the Fifth Amendment applies only to the federal government. Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (dismissing Fifth Amendment due process and equal protection claims brought against the City of Los Angeles because defendants were not federal actors); see also Low v. City of Sacramento, 2010 WL 3714993 (E.D. Cal. Sept. 17, 2010). None of the individuals identified in this cause of action are federal actors, so the Fifth Amendment does not apply.

Plaintiff argues in response to the OSC that the undersigned "mistook Plaintiff's Count XII to use First Amendment and Fifth Amendment to sue the State individuals. It is wrong as Plaintiff has made it very clear throughout the pleading that the state individual is responsible under 28 U.S.C. 1983, which requires infringement of civil rights under the Constitution." ECF No. 32 at 17. This argument reflects a misunderstanding of § 1983 and conflicts with the contents of the complaint, which specifically invokes plaintiff's rights under the First and Fifth Amendments.

Section 1983 provides a cause of action—a vehicle for seeking relief—for violation of federal constitutional rights by state actors. See 42 U.S.C. § 1983; Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990). To prevail on a claim under § 1983, a plaintiff must plead and prove both the statutory elements of liability (e.g., that the defendant is a person acting under color of state law) and the elements of the specific constitutional violation(s) alleged. Plaintiff's allegations do not and cannot establish any violation of her Fifth Amendment rights because the named defendants, even assuming they are persons who acted under color of State law, are not governed by the Fifth Amendment at all. See Dusenbery v. United States, 534 U.S. 161, 167

(2002) (Fifth Amendment is source of *federal* government's due process obligations). Her allegations do not establish any deprivation of her First Amendment rights for the reasons already explained. Accordingly, this count fails to state a claim for relief on either theory.

### F. Count XIV Fails to State a Claim

Plaintiff asks the court to command the California Commission on Judicial Performance, an independent state agency, to re-open complaints that she filed. ECF No. 1 at 151. This cause of action amounts to a direct appeal of the Commission's decisions, which the court has no jurisdiction to consider; plaintiff's allegations do not demonstrate the deprivation of any constitutionally protected interest that can be vindicated under § 1983.

Plaintiff argues in response to the OSC that there is precedent for courts enjoining the actions of a state board, citing Gibson v. Berryhill, 411 U.S. 564, 577 (1972), in which an optometrist sought an injunction preventing a state board from suspending his professional license. ECF No. 32 at 24. That case has no relevance here. In Gibson, the plaintiffs were challenging changes to Alabama's law governing the practice of optometry. In the professional licensure context, due process claims are cognizable under § 1983 because licensing constitutes state action and wrongful suspension constitutes a deprivation of a protected interest. The Gibson plaintiffs sought to enjoin state action that was threatened against them under a law they alleged was unconstitutional. That is not the case here. Every case plaintiff cites has to do with the suspension of a professional license, ECF No. 32 at 24-57, and all are equally inapposite.

In Count XIV, plaintiff asks this court to re-open complaints she made about judges. ECF No. 1 at 151. She identifies no license or property right that she is at risk of losing, and none is apparent. The court can identify no cognizable cause of action on the facts alleged, and no basis for any authority to review actions of the Commission. This claim must be dismissed.

### G. Count VII Fails to State a Claim

Plaintiff asks the court to declare the Inns of Court a criminal enterprise. Plaintiff cites no basis for the court's authority to do so, and the court is aware of none. To the extent plaintiff intends to charge the Inns with a crime, she cannot do so. "Criminal proceedings, unlike private civil proceedings, are public acts initiated and controlled by the Executive Branch." Clinton v.

10

Jones, 520 U.S. 681, 718 (1997). Accordingly, Title 18 of the United States Code does not establish any private right of action and cannot support a civil lawsuit. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (criminal provisions provide no basis for civil liability). Again, the court cannot provide the requested relief. Plaintiff does not contest this point. The claim must be dismissed.

### H. Most Defendants are Immune from Relief

The OSC informed plaintiff that, even if she had otherwise stated a claim, most of this case would be subject to dismissal because most of the named defendants are judges immune from suit. The Supreme Court has held that judges acting within the course and scope of their judicial duties are absolutely immune from liability for damages under § 1983. Pierson v. Ray, 386 U.S. 547 (1967); Stump v. Sparkman, 435 U.S. 349, 356–7 (1978). "Like other forms of immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial immunity is overcome only when a judge's actions are either (1) nonjudicial in nature, i.e., not taken in the judge's judicial capacity, Forrester v. White, 484 U.S. 219, 227–29 (1988); or (2) taken in the complete absence of all jurisdiction, Stump, 435 U.S. at 356–57.

Plaintiff contended in her complaint, and contends again in her response to the OSC, that immunity does not apply here because the actions of the judicial defendants were crimes or based in illegal acts. See, e.g., ECF No. 1 at 13; ECF No. 32 at 22. As explained in the OSC, "[a]llegations of malice or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute judicial immunity." Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1985). Again, plaintiff's conclusory assertion that the judicial defendants were acting criminally does not overcome immunity, and it is clear from the complaint that plaintiff is challenging decisions made in the judges' judicial capacities. Because the judicial defendants are absolutely immune from suit, because their conduct involved the adjudication of matters properly before them in the course of their judicial duties, this court cannot provide relief.

////

////

I. <u>The Entire Complaint Must Be Dismissed as Implausible or Frivolous</u>

To state a claim in federal court, a complaint must be facially plausible. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The Supreme Court has made clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Moreover, a complaint may be dismissed for factual frivolousness if the allegations are clearly baseless, a category encompassing alleged facts that are fanciful, fantastic, or delusional. <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Plaintiff's complaint makes sweeping conclusory allegations of wide-spread fraud and conspiracy running through all levels of various state and federal courts, nonprofit organizations, and private attorneys. The largely conclusory allegations to not meet the plausibility threshold. For example, plaintiff repeatedly asserts without support that defendants have made "tacit admissions" of fraud. <u>E.g.</u>, ECF No. 1 at 10 ("In fact, James McManis had tacitly admitted to Plaintiff's severe criminal accusation of conspiracy to cause her permanent parental deprival..."); <u>id.</u> at 24 ("American Inns of Court Foundation, American Inns of Court Foundation- Honorable William A. Ingram Chapter, American Inns of Court Foundation-San Francisco Bay Chapter have tacitly admitted that they conspired with D.C. Circuit Court of Appeal in commission of the 6 felonies of alteration of court…"); <u>id.</u> at 35 (various judicial defendants "have tacitly admitted to their conspiracy with Judge Rudolph Contreras to grant their attorneys' motion for pro hac vice in contravention with the Local Rule of U.S.D.C. for the D.C. and to grant dismissal.") Conclusory allegations such as these cannot support a plausible complaint that can be adjudicated in federal court. Of the factual allegations that are not conclusory, many if not most are "clearly baseless" within the meaning of <u>Denton</u>, 504 U.S. at 32-33.

Plaintiff has already been given the opportunity to amend her complaint or persuade the court that the existing complaint can be successfully litigated. ECF No. 24. Because plaintiff

"cannot possibly win relief" on any of her claims, sua sponte dismissal is appropriate. See Wong v. Bell, 642 F.2d 359, 362 (9th Cir. 1981); see also Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). Plaintiff's responses make it clear that the complaint cannot proceed.

J. Further Leave to Amend Would Be Futile

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000). Further leave to amend is not recommended in this case because (1) plaintiff has had an opportunity to amend and failed to provide a viable complaint, (2) plaintiff's responses make it clear that she will not provide a viable complaint and that further leave to amend would be futile, and (3) because plaintiff is an attorney, albeit an attorney with a suspended license, she should be aware of the pleading requirements and case law that is controlling in federal court. For all these reasons, further leave to amend is not recommended.

CONCLUSION

For the reasons explained above, the undersigned HEREBY DENIES plaintiff's motion to recuse (ECF No. 32) as to herself.

Additionally, IT IS HEREBY RECOMMENDED that Judge Mendez DENY the motion to recuse (ECF No. 32) as to himself.

It is further RECOMMENDED that this action be dismissed with prejudice in its entirety because plaintiff cannot state a claim upon which relief can be granted.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). Plaintiff is advised that failure to file

////

////

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 29, 2022

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE